Succession of Triche.

No. 6140.

SUCCESSION OF DRAUZIN TRICHE.

The purchaser of property sold at probate sale, which is incumbered by a mortgage antedating the title of the deceased owner, is entitled to reserve in his possession enough of the purchase price to satisfy the mortgage.

The creditor of an insolvent succession, with a *first* mortgage on a piece of its property, who buys in the property, may retain in his hands the amount of his mortgage; provided, he gives security to refund whatever may be finally shown is not to be applied to his mortgage.

But the creditor with an inferior, or concurrent mortgage, who bids in the property, must pay over the amount of his bid.

APPEAL from the Parish Court of the parish of Lafourche. *Knobloch*, J.

*Clay Knobloch*, for administrator and appellee.

*Louis Guion*, for Jules Lapéne.

The opinion of the court was delivered by

SPENCER, J. Drauzin Triche died leaving a considerable estate, consisting of movables and several tracts of land. The estate appears to be largely insolvent—no less than forty mortgages and privileges being certified against it.

On an undivided fourth of one of these tracts of land Pierre Rousseau holds a special mortgage and vendor's privilege for several thousand dollars, imposed and granted, not by Triche, but by his vendor.

Sundry legal and judicial mortgages are inscribed against Triche, and subsequent to some of these there is inscribed a special mortgage on the whole of the above-mentioned Rousseau tract in favor of Lapéne & Ferré for over six thousand dollars. The correctness of this debt to Lapéne & Ferré is not contested, but admitted and recognized by the administrator of Triche.

Certain other parties, mortgage creditors, took a rule on the administrator of Triche and obtained an order to sell all the property of the estate to pay debts. Lapéne & Ferré also obtained an order for a meeting of creditors of the estate as insolvent, but the administrator enjoined the proceeding, and nothing further seems to have been done under the order. In the mean time the property of the estate was sold in lots, and Lapéne bid off lots to an amount exceeding ten thousand dollars. Most of the lots bought by him were subject to the mortgages of Rousseau and of Lapéne & Ferré; but some of them were outside of the lands subject to said mortgages, as were also certain movables bought by him. The sheriff demanded of Lapéne the amount in full of his bid, in cash, but the latter refused to pay, alleging —

First—That he had the right to retain in his hands the amount of the Rousseau mortgage, so far as it operated on the lots bought by him; and,

Succession of Triche.

Second—To retain the amount of the mortgage of his firm, Lapène & Ferré, until final settlement of the estate, upon giving security for restitution of such portion thereof as might be declared not applicable to said mortgage.

The sheriff and administrator thereupon took a rule upon Lapène to show cause why the property bid in by him should not be resold, à la folle enchère; and Lapène in his turn took a rule on the sheriff and administrator to show cause why he should not be put into possession and title be made to him of the same property.

These rules were tried together, and the probate court made the former absolute and discharged the latter. Lapène prosecutes this appeal from the decision of both cases.

The questions presented are, did Lapène have the right to withhold—

First—The amount of the Rousseau mortgage and vendor's lien so far as operating upon the lots bought by him?

Second—The amount of the mortgage due his firm of Lapène & Ferré, upon giving security for restitution?

So far as relates to the personal property and lots bought, not embraced in his or Rousseau's mortgage, we see no possible right in Lapène to retain the price.

As regards the first question above put there is no doubt that the property passed subject to and incumbered by the Rousseau mortgage. A probate sale divests only such mortgages as were imposed by the deceased. 9 L. 13; 11 An. 383; 3 R. 5; 8 R. 99.

A purchaser is bound for nothing beyond the amount of his bid. The administrator of Triche had no right to receive, and therefore no right to demand, payment of the amount due to Rousseau, who was not a creditor of Triche, and whose mortgage antedated the latter's title. The amount due to Rousseau on the lots bid off by Lapène must therefore of necessity be left in the hands of the latter, who by his purchase assumed its payment, and in whose hands said lots continued to be incumbered by it.

We see no reason for distinguishing this case from that provided for in articles 679 and 683, Code of Practice. These articles provide in substance that when there exist antecedent mortgages and privileges which the sale does not divest, the sheriff shall give notice that the property is sold subject to them and on " condition that the purchaser shall pay into his hands · whatever portion of the price of adjudication may exceed the amount of the privileges and special mortgages to which such property is (sold) subject;" " that the purchaser shall be entitled to retain in his hands, out of the price of adjudication, the amount required to satisfy the privileged debts and special hypothecations to which the property was (sold) subject."

True, these articles relate to sales of real estate under writs of *fieri facias*, but we apprehend that they are equally applicable to sales under orders of seizure and to other judicial sales where the sale will not have the effect of divesting the property of such preferred mortgages and privileges. In point of fact the administrator of Triche certainly could not sell and deliver a greater right in the property than Triche himself had; and his right in that property was subject to the Rousseau mortgage.

The property was only worth what it would bring, and the price bid must be taken as its absolute value, and this pre-existing and continuing mortgage must be considered as embraced in that price. The amount of said mortgage therefore, so far as it operated upon the lots bought, must be deducted from the bid and left in the hands of the purchaser. There would be no justice in permitting the estate of Triche to enrich itself to the extent of the Rousseau mortgage by imposing its payment on Lapène over and above the value of the property. The article 2535, Civil Code, has no application to this case.

The second question relates to Lapène's right to retain in his hands the amount of the mortgage due his firm.

The estate of Triche is clearly shown to be insolvent by the administrator's provisional account, and should, perhaps, have been administered as such under the direction of its creditors. But that course seems to have been defeated, and the property sold at ordinary succession sale to pay debts.

As, however, the estate is insolvent and to be distributed *in concurso*, the rules applicable to insolvent estates may very properly be applied here.

In Goodale vs. His Creditors, 8 L. 302, the court held that at a sale of the property of an insolvent, provoked by the first-mortgage creditor, he may, if he purchases the mortgaged property, retain the price on giving security to refund such portion thereof as may on final settlement be found not applicable to payment of his mortgage; but if there be superior or concurrent mortgages, he can not so retain the price.

In 11 An. 594, Justice Buchanan as the organ of the court says it seems as well settled that a mortgage creditor purchasing at probate sale may retain the price upon giving security. Justices Slidell and Spofford dissented on the ground that in that case the mortgage was tacit and the debt disputed and in litigation. On rehearing, Merrick, Chief Justice. delivering the opinion (Buchanan and Voorhies dissenting), held that, whatever may be the law as to purchases by holders of special mortgages, the holder of a tacit mortgage can not retain the price until his claim is liquidated.

We think the better opinion is that a special mortgage creditor first in

rank may, if he purchase the mortgaged property at probate sale, retain the price upon giving security as stated; but if there exist mortgages superior or concurrent, he must pay over the amount of his bid.

An examination of the record in this case does not enable the court to decide definitively upon the rights of the parties. The provisional account and tableau filed by the administrator (and which it seems is contested) and the mortgage certificate in evidence show certain judicial and legal mortgages on the property subject to Lapène & Ferré's mortgage older than and therefore superior in rank to theirs. But as there may be other property which must be first applied to these general mortgages, and as their amounts are perhaps in dispute, we think it safer to remand this case in order that the existence, amounts, and rank of these general mortgages may be ascertained and fixed contradictorily. If it shall be ascertained that said legal and judicial mortgages are preferred and must be paid in preference to Lapène & Ferré's mortgage out of the property embraced in the latter, then the rule should be made absolute requiring Lapène to pay over the surplus, after deducting the Rousseau mortgage, and in default, within a time to be fixed, ordering the property to be resold *à la folle enchère*. If said mortgages are found not to exist, or not to be preferred to Lapène & Ferré's mortgage on said property, then the rule taken by Lapène on the sheriff should be made absolute, and the sheriff ordered to make the title upon said Lapène giving satisfactory security to refund such sum as may be necessary on final settlement of the estate. So far as relates to lots and personal property bought by Lapène, not embraced in the Rousseau and Lapène & Ferré mortgages, of course he can not pretend to hold the price, and to that extent the judgments appealed from must be affirmed.

It is therefore ordered, adjudged, and decreed by the court that the judgments appealed from be avoided and reversed, except so far as relates to the lots and personal property bought by Lapène not subject to the Rousseau and Lapène & Ferré mortgages; and it is further ordered that this case be remanded to be proceeded with according to law and in conformity to the views herein expressed, and that appellee pay the costs of this appeal.