No. 14,068.

SUCCESSION OF ANNA E. JAMISON.

SYLLABUS.

Assuming that a belated creditor, appearing and asserting his claim for the first time after the homologation of an administrator's account, may arrest, in the hands of the latter, any unpaid balances which, by the judgment of homologation, are to be distributed among the heirs of the deceased debtor, it is, nevertheless, incumbent upon such creditor to prove his claim contradictorily with the heirs, or their creditors. He is not entitled to proceed summarily, and by rule, before such homologation, or to a trial in the Civil District Court during vacation, for the purpose of making such proof, and the fact that he asserts his claim after the account is homologated does not confer those rights upon him.

IN RE. Louisiana National Bank Applying for *Certiorari*, or Writ of Review, to the Court of Appeal, Parish of Orleans, State of Louisiana.

---

*Branch K. Miller,* for Applicant.

---

*Carroll & Carroll,* for Mrs. Louise A. Dubost, Respondent.

---

*Florance & Rosen,* for The Manhattan Cement Company, Respondent.

---

*Joseph C. Gilmore* and *P. M. Gilmore,* for Holmes & Salter, Respondents.

---

The opinion of the court was delivered by

MONROE, J. This is an application on behalf of the Louisiana National Bank for the review of a judgment rendered by the court of appeal for the parish of Orleans. The following case is presented: Mrs. Anna E. Jamison died in December, 1899, and in June, 1900, her administrator filed an account showing that he had on hand $30,675.00 in cash, which had been realized from the sale of real estate; that he proposed to pay debts amounting to $27,209.59; and concluding as follows:

"Total cash from real estate.......................... $30,675 00
"Total amount liabilities ............................ 27,209 59

"Balance for distribution .......................... 3,465 41

"The above balance is to be distributed among the heirs as follows:

"To the heirs of David Jamison........................ $577 57
"To Samuel Jamison ................................. 577 57
"To Miss Jennie A. Jamison ......................... 577 57
"To Miss Anita R. Jamison .......................... 577 57
"To Irwin Jamison ................................. 577 57
"To Robert Jamison ................................ 577 57

$3,465 41

To this, the administrator attached a memorandum to the effect that, as against Irwin Jamison, Mrs. Louisa M. Dubost had obtained judgment for $1,224.95, May 30, 1898, and recorded same June 15, 1898; that the Manhattan Cement Company had obtained judgment for $2,543.49, February 8, 1898, upon which a writ of execution had been issued and recorded May 16, 1900; and stating that he did not propose to decide which of said creditors was entitled to the share of said Irwin Jamison, but submitted the matter to the court. The memorandum further sets forth that, as against Robert Jamison, Holmes and Salter had obtained judgment for $300, February 12th, 1896, which was recorded May 12th, 1896; that Leon J. Reinberg had obtained judgment for $34.25, September 2nd, 1897, which was recorded October 25th, 1897; and that Livingston & Wood had obtained judgment for $40.00, which was recorded January 27th, 1900. The account, as thus presented, was opposed by Mrs. Dubost, who set up the judgment which she had obtained against Irwin Jamison, alleged that she had caused his interest in the succession to be seized, and prayed that the account be amended by crediting said interest upon her claim. No other oppositions having been filed, the account was homologated, so far as not opposed, by judgment signed June 28th, 1900. The next proceeding taken in the case was in the form of a rule filed on behalf of the Louisiana National Bank, August 2nd, 1900, in which the mover alleges that it holds and owns two promissory notes made by the decedent, one for $100, dated August 27th, 1896, and payable on

demand, and the other for $925, dated January 2nd, 1896, also payable on demand, and both wholly unpaid. Mover further alleges that the notes were omitted from the account and that it had filed no opposition, but that the succession is solvent and that, though the amount appearing to be due to the other heirs have been paid, the shares of Irwin and Robert Jamison are still in the hands of the administrator, as funds of the succession, which must be used for the payment of its debts before it can become the property of said heirs, or be appropriated to the payment of their debts. And, in accordance with the prayer of this rule, the administrator and the different creditors of Irwin and Robert Jamison who have been named were ordered to show cause why the different amounts appearing on the account to be due to those heirs should not be paid to the mover.

The administrator answered that he had paid to the several heirs the amount due to them as per the account save in the case of Irwin Jamison, whose share he still retained, and in the case of Robert Jamison, of whose share he still had in his hands $374.25.

Irwin and Robert Jamison disclaimed interest in the matter, and their creditors urged the following, by way of exception and answer.

1. That the proceeding by rule was unauthorized.

2. That the issues presented could not be tried during vacation.

3. That the judgment homologating the account could not be ignored, revised, or reversed, in the manner proposed.

4. That the judgment homologating the account operated, in fact and in law, as a partition of the funds offered for distribution, and had become executory, and that the distributive shares of Irwin and Robert Jamison no longer belonged to the succession but belonged to the creditors of said heirs by virtue of the judgments obtained and the seizures made by them.

5. That, in no case, could the mover in the rule recover more than one-sixth of its claim out of the shares of said heirs, respectively.

6. That the decedent was not indebted to the bank as claimed.

After hearing, the judge of the first instance made the rule absolute in so far as to order that the virile shares of Irwin and Robert Jamison, of the debt claimed by the mover, be paid from the funds in the hands of the administrator. In the court of appeal, the judgment so rendered was reversed, the objection to the form of the proceeding was sustained, and the rule dismissed with costs, "reserving to the mover

the right to assert, by proper proceedings, such claim as it may have in the premises."

Assuming that a belated creditor, appearing and asserting his claim, for the first time, after the homologation of the account, may arrest, in the hands of the administrator, any unpaid balances which, by the judgment of homologation, are to be distributed to the heirs, it is, nevertheless, incumbent upon such creditor to prove, contradictorily with those who are interested in defeating his claim, that he *is* a creditor of the decedent, or of the succession. He would be obliged to make such proof if he appeared before the homologation of the account, and is not relieved of that necessity because he appears afterwards. He would not be entitled to proceed summarily, and by rule, before the homologation of the account, nor would he be entitled to a trial during vacation of the court, and the fact that he asserts his claim after the account has been homologated does not enlarge his rights in either respect.

In the instant case, if the bank, finding that its claim against the deceased had not been recognized by the administrator and that the balance necessary for its payment was to be distributed among the heirs, or among the creditors of those heirs, had sought a remedy before the homologation of the account, that remedy would have been found in an opposition, which is an ordinary proceeding, and upon the trial thereof it would have been obliged, contradictorily with the heirs and their creditors, to prove its claim. It is not suggested that the necessity for making such proof was any the less imperative because the claim was not asserted until after the account of the administrator had been homologated, but it is insisted that the bank had the right to proceed by rule and out of the term time for that purpose. This position is untenable.

"The right to proceed by rule, or on motion, implies the pendency of a suit between the parties, and is confined to incidental matters which may arise in the progress of the contestation, except in certain cases, where a summary proceeding is expressly allowed by law."

Thomas, Administrator, vs. Bourgeat, Executor, 6 R. 437; Copley vs. Conine, 3 Ann. 206; Baker *et als.* vs. Doane *et als.*, Ib. 434; Nolan vs. Taylor, 12 Ann. 202; Sharp vs. Bright *et als.*, 14 Ann. 390; C. P. 98, 170, 754.

The right to summary proceedings cannot be extended beyond the

cases expressly authorized by law. Baker *et als.* vs. Doane *et als.*, 3rd Ann. 434; Austin Sumner & Co. vs. Dunbar, 12 Ann. 182; Mussina vs. Alling *et al. Ib.* 799.

The case of West vs. His Creditors, 8 R. 123, to which we are referred by counsel for the plaintiff in rule, is inapplicable. It there appeared that a rule had been taken by a syndic to show cause why a certificate of debt, in the hands of the clerk of the court, should not be delivered to him, to which a creditor of the insolvents, who had caused the certificate to be seized under execution, objected, that the proceeding by rule was illegal. It was held (quoting the syllabus) that:

"The rule was well taken, the creditor claiming only a privilege, or lien, on the certificate. Had the latter set up any title to the certificate, and been in possession of it, the proper remedy to recover it would have been a direct action."

It is said that the civil district court is authorized by article 136 of the Constitution to adopt rules, and that the rules adopted are not in the record, but that they authorize the trial of summary matters in vacation. But, as the matter in question was not summary, the rules referred to would not apply to it. And Article 135 of the Constitution evidently contemplates that contests arising over accounts filed by administrators shall be tried only in term time. These views preclude inquiry into the merits of the controversy between the plaintiff in rule and the creditors of Irwin and Robert Jamison, as to which no opinion is expressed.

For these reasons it is ordered, adjudged and decreed that the relief prayed for by the applicant be denied and this proceeding dismissed at its cost.

Rehearing refused.