(90 South. 508)

No. 22958.

Succession of GUILLEBERT.

(Jan. 2, 1922.)

*(Syllabus by Editorial Staff.)*

Execution ⟐⟐322—**Purchaser of all judgment debtor's property, upon execution by one of two joint judgment creditors, could retain that portion of price other creditor might claim from him.**

Where two daughters obtained a joint judgment against their mother, and one, under execution, sold property which was purchased by her husband, who failed to make full payment to the sheriff, and the other judgment creditor was an interdict and subsequently died, and the property sold was all that the debtor owned, and the execution creditor is not claiming the portion of the proceeds which would go to the such other judgment creditor had she joined in the execution, *held,* that purchaser could retain that portion of the price which would otherwise go to such interdict, to protect him against her claims or those of her heirs, in a rule by the sheriff to compel purchaser to pay balance of price, in view of Code Prac. arts. 683, 710, 711, et seq., and Civ. Code art. 2621.

Monroe, C. J., dissenting.

*(Syllabus by Monroe, C. J., Dissenting.)*

The adjudicatee of property sold at the instance of one of two mortgagees, by general and concurrent mortgage, may be required by the sheriff to pay the entire price into his hands.

The rule that the buyer may suspend the payment of the price where he has just reason to fear that he will "be disquieted by an action of mortgage, or by any other claim," is subject to an exception "when the buyer has been informed, before the sale, of the danger of eviction." C. C. 2557.

Appeal from Fourteenth Judicial District Court, Parish of Avoyelles; Allen Bordelon, Judge.

In the succession of Constance Guillebert a judgment was obtained by Mrs. Adele Barbin, wife of Dr. A. T. Barbin, and her sister, Camille Modistine Guillebert, against their mother, Constance Guillebert, and her husband, Alfred J. Mayer, as tutor and cotutor of plaintiffs. Executions were had upon Mrs. Barbin's portion of the judgment and available property was seized and sold to Dr. Barbin, and the sheriff took a rule on the purchaser to show cause why he should not comply with his bid and in default thereof that the sheriff be permitted to readvertise. Judgment for plaintiff in rule, and the defendant, Dr. Barbin, appeals. Judgment set aside and decreed that the purchaser pay in cash and deliver to the sheriff a bond for such proportion of the purchase price bid as the balance due to the plaintiff in execution bears to the total remaining sum of her judgment added to that in favor of the other judgment creditor, and that, accordingly, the sheriff execute to the purchaser deeds for the property showing remainder of said bids retained on account of the judgment in favor of the other judgment creditor.

A. V. Coco, of New Orleans, and W. E. Couvillon, of Marksville, for appellant.

G. H. Couvillon and E. L. Lafargue, both of Marksville, for appellee.

DAWKINS, J. Mrs. Adele Barbin, wife of Dr. A. T. Barbin, and her sister Camille Modistine Guillebert, obtained a joint judgment, each for the specific and separate sum

of $19,406.43 against their mother, Constance Guillebert, and her husband, Alfred J. Mayer, as tutor and cotutor respectively, of the said plaintiffs. Executions were had upon Mrs. Barbin's portion of the judgment, which reduced the amount thereof by several thousand dollars. Finally, Mrs. Barbin seized under the remainder of her part of said judgment all the available property of the defendants therein. In due time it was offered for sale, and Dr. Barbin, husband of plaintiff in execution, bid in a portion thereof, to the extent of $5,631, to be paid in cash, and the remainder was later reoffered and adjudicated to him for the sum of $8,399.50, to be represented by 12 months' bond. Dr. Barbin took possession of the property and has since collected the revenues, but has paid no part of the cash, nor has he executed the bond.

Some 10 months later the sheriff took a rule on the purchaser to show cause why he should not comply with his bid, and in default thereof that he (the sheriff) be permitted to readvertise the property for sale at the expense of the said Barbin. Defendant in rule answered that he was only bound to pay, and had offered to pay, such portion of the price as the seizing creditor had the right to demand, and that he is entitled to hold the balance to protect himself against the claim of the concurrent mortgage creditor, the said Miss Camille Modistine Guillebert, but that said offer had been refused. He further averred that there was due to his said wife, at that time, a balance of $14,036.87, and that there was due to the said Miss Guillebert the sum of $25,560.23; that of the net proceeds of the sale for cash Mrs. Barbin was entitled to receive $1,777.78, and Miss Guillebert $3,238.12; that of the amount due on bond his said wife should receive $2,797.17, and Miss Guillebert $5,079.43; and that he can be compelled to pay and give bond for the amounts only which are due Mrs.

Barbin, plaintiff in execution; the balance, he avers, he is entitled to retain until demanded by Miss Guillebert.

Defendant in rule further alleged that—

The property which he had bought was "all the properties owned by the seized debtors; that, Miss * * * Guillebert being entitled to the proportion of the said sales as already shown herein, * * * he fears, and has just and good reason to believe and fear, that proceedings will be commenced against him to pay her pro rata of the said sales, or to quit, abandon, and turn over to her said property so purchased by him, for the purpose of realizing upon her judgment, and he is therefore entitled to retain the price due the said Miss * * * Guillebert to meet her claim when the same is made."

There was judgment for plaintiff in rule, and defendant, Dr. Barbin, has appealed.

### Opinion.

This case is somewhat unusual, in that in the same judgment or decree the two plaintiffs therein, sisters of the full blood, were given or allowed to recover identical amounts, pronounced separately in their favor, and which made it possible for execution to run at the instance of the one without in any wise affecting the rights of the other thereunder. The question therefore is, Is the purchaser under execution, at the instance of one of such judgment creditors alone and upon his separate portion of the judgment entitled to retain that portion of the price which would be coming to the other, if she had joined in the execution, where the property seized (being all that the debtor owned) was affected by the common judicial mortgage resulting from the recordation of the joint judgment?

It is contended, of course, by the plaintiff in rule that this right does not exist, because article 683 of the Code of Practice accords it only in cases of privilege and conventional mortgages.

Article 710 of the Code of Practice provides:

"If there exist a general mortgage on the property resulting either from a legal or judicial mortgage, the purchaser cannot avail himself of this mortgage, although it be duly recorded, to retain part of the price for the purpose of paying it, or to refuse paying the price, if that has not been already done, unless there has been a suit commenced against him, in virtue of this general mortgage, to make him quit the property, or unless he has just reason to fear that such a step will be taken, in which case he may retain the price, unless the suing creditor· shall relieve him from this disturbance, or give him proper security against it."

A mere reading of this article discloses that in ordinary cases the purchaser of real property under an execution, either of a writ of fi. fa. or seizure and sale, where there are outstanding general mortgages, resulting from the recordation of judgments or otherwise, takes the same subject to the possibility of being called upon, in a hypothecary action, to pay such outstanding judgments or give up the property, but cannot, on that account, refuse to pay the price which he has bid, except in the cases specially provided in that article. The provisions of the article are in the interest of the execution creditor, and the reason therefor no doubt is that it was considered by the lawmaker that the debtor might own other property subject to such general mortgages, which the purchaser under any given execution could require the mortgagees to discuss before calling upon him to surrender that so purchased, and it was not therefore certain that he would ever be disturbed or have to pay such other general mortgage claims. Then, the Codes (C. P. 711 et seq., and C. C. 2621), give the purchaser recourse against both the execution creditor and debtor.

However, the article itself (C. P. 710) recognizes that there are cases in which the probability of eviction is so great that the purchaser may not have any protection or recourse for the repayment of his money, and in such cases permits the purchaser to retain the price, unless proper indemnity be furnished by the execution creditor. These cases are where suit has commenced, or the purchaser has just cause to fear that he may be called upon to give up the property. As above stated, these provisions of the law are for the benefit of the execution creditor and debtor, respectively, and the sheriff, as such, has no interest in asserting them for the benefit of either. It appears from the record in this case that the purchaser, Dr. Barbin, has offered to pay in cash the costs, and to furnish the sheriff the receipt of his wife, Mrs. Adele Barbin, plaintiff in execution, for the portion of the proceeds of the sale which it is contended is due her, under the theory that the remainder can alone be demanded by Miss Guillebert. This position is sustained by the ruling of this court in the case of Perret v. Roussel, 19 La. Ann. 174, in which it was held that the holders of judgments, and even the assignees of portions of the claims arising under a tutor's legal mortgage, have the right to share ratably in the proceeds of property affected thereby, just as in the case of the holders of several notes under a series secured by the same conventional mortgage. If this be true, then the sheriff has no mandate or other authority to collect that portion of the proceeds of the property which would be coming to Miss Guillebert, and hence it would be paid into his hands, there to remain until such time as Miss Guillebert or her heirs might see fit to claim it and thereby ratify the sale and authorize the cancellation of the judgment as to the property sold, or until she or they determined to pursue the property by hypothecary action, in which event Dr. Barbin, it would seem, could recover back from the sheriff the money so paid over to him. If the plaintiff in execution in this case were a stranger to Dr. Barbin, instead of his wife, and the whole of the proceeds of these sales were paid over to him, and later Miss

Guillebert should evict Dr. Barbin or compel him to pay her a sum equivalent to her portion of the money, undoubtedly, under article 711 et seq. of the Code of Practice, Dr. Barbin could compel such execution creditor to refund him the sums so paid; but could he recover the portion to which the said creditor was ratably entitled under the joint judgment? We think not. Then, would such creditor not have the right to decline to receive any but the part which he was lawfully entitled to under the execution, leaving the balance in the hands of the sheriff? We think so. If this were not so, then a concurrent mortgage creditor could, never have execution on his mortgage without running the risk of having to respond to an action on the part of the purchaser, when the latter was compelled to pay or give up the property at the hands of another mortgage creditor of equal rank.

In view of the fact that the property sold under the execution in this case was all that the debtor owned, and that there is very grave danger of Miss Guillebert or her heirs pursuing the property under her mortgage, coupled with the fact that the execution creditor is not claiming the portion of the proceeds which would go to Miss Guillebert had she joined in the execution, this proceeding being at the instance of the sheriff alone, we think the purchaser, Dr. Barbin, is entitled to retain that portion of the purchase price which would otherwise go to Miss Guillebert, to protect himself against her claims or those of her heirs.

For the reasons assigned, the judgment appealed from is set aside, and it is now ordered and decreed that Dr. A. T. Barbin pay in cash and deliver to the sheriff bond for such proportion of the purchase price bid by him for the property under the said sales as the balance due to the plaintiff in execution bears to the total remaining sum of her own judgment, added to that in favor of Miss Camille Modistine Guillebert; and that, accordingly, the said sheriff execute to and in favor of the said A. T. Barbin deeds for the said property, showing that the remainder of said bids are retained by the purchaser on account of the judgment in favor of the said Miss Guillebert. Appellee to pay costs.

### Statement of the Case.

MONROE, C. J. (dissenting). By judgment of this court which became final on October 20, 1913 (Succession of Guillebert, 133 La. 603, 63 South. 237), Mrs. Marie Grenier, a widow, by first marriage, of Constant Guillebert, and wife, by second marriage, of Alfred J. Mayor, was condemned, in solido with Mayor, in their capacities as tutrix and cotutor of Mrs. Adele Barbin, wife of Dr. A. Tillou Barbin, and Miss Camille Modistine Guillebert, her sister, children of said first marriage, to pay each of them $19,406.43, with certain interest, and, during several years which followed, various amounts were paid by the judgment debtors, or out of their property, to Mrs. Barbin, and credited in reduction of the judgment so rendered in her favor; but the record fails to show any payments in reduction of the judgment in favor of Miss Guillebert, who is said to have been an interdict, living in a retreat in France, at the expense of her mother, and to have departed this life since the institution of this proceeding.

Early in 1916 an alias writ of fieri facias was issued, under the judgment mentioned, in so far as it purports to run in favor of Mrs. Barbin, and, by virtue thereof, the sheriff seized all of the property of the judgment debtors that was pointed out or that could be found, and on April 8, 1916, offered it for sale and adjudicated a portion of it to Dr. Barbin for $5,631, to be paid in cash, after which the remainder was readvertised, and on May 6, 1916, adjudicated to the same bidder for $8,399.50, for the payment of

which he was to give a 12 months' bond; and Dr. Barbin took possession of the property so adjudicated (for cash and on credit) and has, since then, collected the revenues therefrom. On March 17, 1917, the sheriff instituted this proceeding—being a proceeding by rule, in which he alleges that Dr. Barbin has paid no part of the $5,631, and has given no bond for the payment of the $8,-399.50, and requires him to show cause why he should not comply with his bids, or, in the event of his continued default in that respect, why he (the sheriff) should not readvertise and resell the property, at his expense; to which Barbin answers, in effect, that the law requires him to pay over to the sheriff only such proportion of the amount bid for the property as the seizing creditor has the right to demand, and authorizes him to retain the balance that may be due to the holders of the concurrent mortgage to meet their demand therefor, when made, and that he has offered, and is willing, to make such payment, upon the execution by the sheriff of a clear title to the property, which offer has been refused. He further alleges that prior to the sale of April 8, 1916, Mrs. Barbin had collected the net sum of $12,063.95 in reduction of her judgment, and that (by reason of a certain calculation of interest, which we have not followed), there remained due her, on that day, $14,036.87, and that there was then due Miss Guillebert the sum of $25,560.-23; that of the net proceeds of the sale of April 8, 1916, Mrs. Barbin was therefore entitled to but $1,777.78, while Miss Guillebert was entitled to $3,238.12; that of the net proceeds of the sale of May 6, 1916, Mrs. Barbin was entitled to $2,797.17, and Miss Guillebert to $5,079.43; and that he can be compelled to pay and give bond only for the amounts due Mrs. Barbin, and has the right to retain the amounts due Miss Guillebert until they are demanded by her. He alleges:

"That the properties sold at said sales constituted all the properties owned by the seized debtors; * * * that, * * * Miss * * * Guillebert being entitled to the proportion of the said sales as already shown herein, * * * he fears, and has just and good reason to believe and fear, that proceedings will be commenced against him by the said Miss * * * Guillebert to force him to pay her said pro rata of the said sales, or to quit, abandon, and turn over to her said property so purchased by him, for the purpose of realizing upon her judgment, and he is therefore entitled to retain the price due the said Miss * * * Guillebert to meet her claim when the same is made."

The court a qua gave judgment for plaintiff in rule, and defendant has appealed.

## Opinion.

It will be remembered that, upon the hearing of the oppositions of Mrs. Barbin and Miss Guillebert, the district court awarded each of them a specific sum in one judgment, which, with slight amendment, was affirmed by this court; that, as appears on this appeal, the writ of fieri facias, by virtue of which the sales to Dr. Barbin were made, directs the sheriff to seize and sell the property of the common debtors, "to satisfy a judgment lately rendered * * * in favor of Adele C. Barbin, wife," etc.; that the evidence shows that the property seized and sold under that mandate was all that the common debtors possessed; and that the proceeds thereof, as thus sold, were insufficient to satisfy the writ so issued, and, if entirely devoted to that purpose, would leave nothing to be credited upon the judgment in favor of Miss Guillebert, which was secured by the identical judicial mortgage whereby the judgment in favor of Mrs. Barbin was secured. C. P. 684, declares that, where the price offered at sheriff's sale is insufficient to discharge the privileges and mortgages which prime that of the judgment creditor, there shall be no adjudication; but it has been held to be well settled that that article applies exclusively to special or conventional,

and not to judicial or general, mortgages. Pasley v. McConnell, 38 La. Ann. 474, 475. Articles 679, 683, and 706, C. P., provide that, where the property is incumbered with special mortgages or privileges which prime that of the seizing creditor, and the amount bid is more than sufficient to satisfy them, the bidder shall pay to the sheriff only the surplus, and shall retain in his hands the amount due on such special mortgages or privileges; and, under article 707, the purchaser may apply the surplus of the price, if there be any, over the amount required to pay the seizing creditor, to having erased the special mortgages existing on the property subsequent to that of the seizing creditor. Article 710 reads:

"If there exist a general mortgage on the property resulting either from a legal or judicial mortgage, the purchaser cannot avail himself of this mortgage, although it be duly recorded, to retain part of the price for the purpose of paying it, or to refuse paying the price, if that has not been already done, unless there has been a suit commenced against him, in virtue of this general mortgage, to make him quit the property, or unless he has just reason to fear that such a step will be taken, in which case, he may retain the price, unless the suing creditor shall relieve him from this disturbance, or give him proper security against it."

It is true that the mortgage in favor of Mrs. Barbin and Miss Guillebert, resulting from the recording of the judgment in their favor, is one and the same, but, none the less, 'it is a judicial and general mortgage, and falls directly within the terms of the article quoted. It is also true that, as it serves a double purpose, it may, reasonably enough, be termed concurrent, and that there are cases in which it has been held that the purchaser of property sold to enforce payment of one of a series of notes secured by the same mortgage may retain so much of the purchase price as may be due to the holders of the other notes of the series; but that is because the mortgage in such case is special and conventional, and the law requires the purchaser to retain the amount attributable to such holders. Alford v. Montejo, 28 La. Ann. 593. In Succession of Triche, 29 La. Ann. 386, Mr. Justice Spencer, as the organ of the court, after considering different views that had been expressed as to the right of a special mortgage creditor purchasing at probate sale to retain the amount of his bid, said:

"We think the better opinion is that a special mortgage creditor first in rank may, if he purchase the mortgaged property at probate sale, retain the price upon giving security as stated; but if there exist mortgages superior or concurrent, he must pay over the amount of his bid."

See, also, Godchaux v. Succession of Dicharry, 34 La. Ann. 579; Nichols v. Bryan, 143 La. 291, 78 South. 562.

Defendant in rule alleges in his answer:

"That, the said Miss Camille Modistine Guillebert being entitled to the proportion of the said sales, as already shown, * * * he fears, and has just and good reason to believe and fear, that proceedings will be commenced against him by the said Miss * * * Guillebert to force him to pay her said pro rata of the said sales, or to quit, abandon, and turn over to her said property so purchased by him, for the purpose of realizing upon her judgment, and he is therefore entitled to retain the price due the said Miss * * * Guillebert, to meet her claim when the same is made," etc.

It does not appear to me, however, that the fear thus alleged is of the character contemplated by C. P. 710, as a reason for permitting a purchaser of property to retain the price, since I think it a fair inference that Dr. Barbin knew as much about the title when he acquired it as he has since learned, save, perhaps, that Mrs. Barbin has since received considerable payments on account of her judgment, and has probably inherited a considerable interest in the judgment obtained on behalf of Miss Guillebert. C. C. 2557; Hennen's Dig. vol. 2, p. 1369, c. No. 1. I may add that, whether the mort-

gage here invoked be the judicial·mortgage, resulting from the registry of the judgment, or the legal mortgage in favor of the minors, which preceded the judgment, the case is the same, since in either case it is a general, and not a special, mortgage, and is within the terms of C. P. 710. Nichols v. Bryan, 143 La. 293, 78 South. 562.

I therefore dissent from the opinion and decree herein handed down.