### SOUTHERN COAL CO., Inc., v. THIBO-DAUX & CHAUVIN et al.

### No. 5619.

Court of Appeal of Louisiana. Second Circuit.

March 8, 1938.

Rehearing Denied April 1, 1938.

G. P. Bullis, of Vidalia, for appellant.

Reeves & Calhoun, of Vidalia, for appellees.

TALIAFERRO, Judge.

The sole question tendered by this appeal is the legality vel non of the procedure resorted to by defendant (a rule to show cause), having for its objective a redistribution of the price of real estate sold by the sheriff of Concordia parish under a writ of fieri facias. The sheriff and E. W. Vogt, the adjudicatee, were impleaded. The lower court sustained exceptions to the form of procedure filed by each defendant and dismissed the rule. Plaintiff in rule appealed.

The material facts are not controverted. The record discloses these to be:

That on December 10, 1924, A. E. Chauvin, plaintiff in rule, purchased by notarial act from D. B. Fleming lots 11 and 12 of block 218 of the town of Ferriday in Concordia parish. Part of the price was deferred. It was represented by two notes of the purchaser for $133.50 each, due, respectively, one and two years after date, with 8 per cent. interest and 10 per cent. attorney's fees. A mortgage and vendor's lien were given to secure these notes. The act was promptly inscribed in the mortgage records of the parish, and was reinscribed therein on July 21, 1936. A period of more than ten years intervened between inscriptions. The first of these notes maturing was paid. There is a declaration in the record that the other one was kept alive by the written renewal of the maker.

On May 7, 1932, the Southern Coal Company was awarded judgment against Chauvin and E. T. Thibodaux, in solido, with five per cent. interest from September 16, 1931, by the district court of Concordia parish. This judgment was promptly recorded in the mortgage records of the parish. On July 25, 1936, E. W. Vogt purchased this judgment for $100 cash. He caused execution to issue thereon, and the sheriff seized the above-described lots, and, after due notices, proceedings, and advertisement, etc., sold same with benefit of appraisement, to Vogt for $500. The mortgage certificate furnished the sheriff at the time of sale disclosed the Fleming mortgage and lien and the judgment assigned to Vogt as encumbrances against the property. Distribution of the amount was made as follows:

| | |
|---|---:|
| Costs | $ 42.60 |
| Judgment and interest | 212.16 |
| Fleming mortgage and vendor's lien note, interest and attorney's fees | 245.24 |
| | $500.00 |

The sheriff's return and deed declare that the above-named $212.16 was retained

by Vogt from his bid to satisfy the judgment owned by him, under which the sale was made.

As regards the balance of $245.24, the return and deed declare that Fleming, through his counsel, Hon. Joseph M. Reeves, appeared and presented the $133.50 note and demanded payment thereof, with interest and attorney's fee, from the purchaser's bid; and they further recite:

"* * * and the said E. W. Vogt, having paid over to the said Reeves said sum, the aforesaid note was marked paid and is herewith tendered for cancellation of the said mortgage securing it; the said Reeves, as attorney for the holders of said mortgage, declaring that the first note for $133.50 given by said Chauvin to D. B. Fleming et als, as fully described in said mortgage, and the mortgage certificate, had long since been paid."

Formal deed by the sheriff to Vogt was executed on September 25, 1936, six days subsequent to the sale. The rule herein was sued out on May 24, 1937, exactly eight months after the execution of said deed. For the purpose of this opinion, we quote below the salient allegations of the application, with prayer thereto:

"6. Said E. W. Vogt bought the judgment against defendants in this suit, from Southern Coal Company, Inc., the original plaintiff herein, for the sum of $100, after said judgment had been herein rendered, and prior to the issuance of said writ of fieri facias under which said sale was made, said purchase having been made on July 25, 1936.

"7. Defendant is therefore entitled to be released from the judgment herein, upon payment of said sum of $100, together with interest at the rate of 5% per annum from the date of said purchase to September 19, 1936, being $.83, the total amount being in principal and interest $100.83, and said sum having been paid to said Vogt under said adjudication.

"8. Said act of sale from said sheriff recites that said E. W. Vogt was permitted to retain in his hands from said sale the sum of $245.24, being the amount of a prior mortgage on said property in favor of D. B. Fleming et als.

"9. The mortgage certificate from the clerk of this court given to said sheriff at the time of said sale shows on its face that said mortgage was dated December 10, 1924, recorded December 16, 1924, and not reinscribed within ten years after its first recording, and said mortgage was therefore null and void and released, and was no longer a mortgage on said two lots so sold as aforesaid at the date of said sale, said mortgage having been given to secure the payment of two notes maturing in 1925 and 1926, respectively, and said notes having been prescribed by the prescription of five years, contained in article 3540 of the Civil Code.

"Wherefore, mover, said A. E. Chauvin, prays that the said E. W. Vogt, plaintiff herein, and E. P. Campbell, sheriff of Concordia Parish, be required to show cause, if any they can show, at a time and place to be fixed by the court, why the relief should not be granted, as hereinafter prayed for; and after due proceedings, that said sheriff be required and ruled to withdraw the permission granted by him to said E. W. Vogt to retain in his hands $212.16 of said bid, as recited in paragraph 5 hereinabove, and $245.24 of his bid, as recited in paragraph 8 hereinabove; that said sheriff be ordered to require and demand from said Vogt and said Vogt be required to pay to said sheriff, the full amount of his said bid, namely $500.00, plus interest at the rate of 5% per annum from September 19, 1936, until paid, less the same amount of costs paid, namely, $42.60, and less the said sum of $100.83 owed on the judgment in this case; and that the said sheriff be ordered and required to pay defendant, A. E. Chauvin, the amount of said bid less said sums, namely, $356.57; plus interest on said sum at the rate of 5% per annum from September 19, 1936, until paid and all costs of this rule; prays for all necessary orders and for such general and equitable relief as to the court may seem proper in the premises."

It is the contention of defendants in rule that as all acts needful to the consummation of the sheriff's sale and distribution of the price thereof have been done and performed, and the writ under which the sale was made returned to the clerk's office satisfied, as directed by law, any proceeding designed to alter or affect the status of things brought about by said official acts must necessarily be through the ordinary processes of court and not by summary process, as herein attempted. Of course, plaintiff in rule defends the course pursued by him and asserts its legality. Fleming was not made a party to the

proceeding; and no issue is raised on that account.

Article 97 of the Code of Practice reads:

"Civil actions may be prosecuted, according to the nature of the case, by three kinds of proceedings, to wit:

"Ordinary, executory, or summary."

And article 98, in part, is as follows:

"They are summary when carried on with rapidity, and without the observance of the formalities required in ordinary cases, as when courts provide for the administration of vacant succession and the property of minors and absent heirs."

"The summary process is to be used in every case where it is expressly prescribed by law." Code of Practice, art. 754; Leidigh-Dalton Lumber Company v. Houck et al., 138 La. 159, 70 So. 72; Succession of Irwin, 33 La.Ann. 63, 68.

"The right to summary proceedings cannot be extended beyond the cases expressly authorized by law." Succession of Esteves, 182 La. 604, 162 So. 194; Bienvenue v. Bienvenue, 186 La. 429, 172 So. 516.

Article 755 of the Code of Practice, inter alia, provides:

"Besides the cases specially directed by law, judgment shall be pronounced summarily:

"1. On all incidental questions arising in the course of a civil trial."

In Fischel v. Mercier, 32 La.Ann. 704, reaffirming prior decisions, the rule is laid down as follows:

" 'The right to proceed by rule or motion (ordinarily) implies the pendency of a suit between the parties, and is confined to incidental matters in the progress of the contestation, except where a (such) summary remedy is expressly allowed by law.'

"Thomas v. Bourgeat, 6 Rob. [435], 437.

"Copley v. Conine, 3 La.Ann. [206], 207.

"Baker v. Doane, 3 La.Ann. 434; [Morgan v. Wintercast] 6 La.Ann. 485; [Nolan's Heirs v. Taylor] 12 La.Ann. 201; [Sharp v. Bright] 14 La.Ann. 390; [Succession of Moore] 18 La.Ann. 512; [Weiser v. Smith] 22 La.Ann. 156.

"The right to initiate an original judicial proceeding by a rule to show cause must be derived from express statutory authority. In the absence thereof, we cannot recognize such mode of proceeding."

"See, also, Succession of Gary, 120 La. 1028, 46 So. 12; Succession of Jamison, 108 La. 279, 282, 32 So. 381, 382.

A diligent search by us does not reveal a single case in the jurisprudence wherein the facts are identical, or nearly so, with those of the present case. None has been cited. Rules have been sustained in a multitude of cases involving the legality of adjudications by sheriff, or the title to the property sold, or the payment or distribution of the price of adjudication, while yet in the hands of the sheriff, but we find none rejecting or sustaining a rule having for its purpose the undoing of official acts such as appear in the case at bar. Such a procedure is certainly not sanctioned by any express law. The fact that no such case has arisen among the many contained in the reports, in which summary process was resorted to, argues very strongly against admittance of the procedure adopted herein. The adjudication under discussion is recognized by plaintiff in rule as being legal. He seeks to recover a portion of the price, now in the hands of others, after the lapse of eight months following its distribution. In view of these facts, fortified by the additional facts that the writ has been returned satisfied and the whole matter closed, so far as the sheriff is concerned, and out of his hands, it cannot be appropriately said that there is a "pendency of suit between the parties," nor may it be correctly said that the present contest is an "incidental matter" arising during the progress of a litigation.

Plaintiff in rule cites and relies upon the following cases to sustain his action: (1) Michoud v. Dejoux, 3 La.Ann. 479; (2) Taylor, Knapp & Company v. Hancock & Company, 19 La.Ann. 466: (3) Buckner v. Gordy, 28 La.Ann. 619: (4) Ash v. Southern Chemical Company, 107 La. 311, 31 So. 656; (5) Succession of Guillebert, 150 La. 49, 90 So. 508; (6) Mulling v. Jones, 164 La. 894, 114 So. 725; (7) Holzer v. Whistle Bottling Company, 3 La. App. 12; (8) Milliken & Farwell v. Taft Mercantile Company, 7 La.App. 150, 151; (9) Viau v. Semprevivo, 9 La.App. 355, 118 So. 831, Orleans Court of Appeal.

In each of these cases, summary process was resorted to in the effort to enforce a real or imaginary right, but none of them is on all-fours with the present case,

as regards facts, which we shall demonstrate by an epitome of such facts.

The facts in the Michoud Case were these:

The purchaser at sheriff's sale, before paying the price of adjudication, refused to accept title to the property because it was affected with a lease, not made known to him at the time of sale. He ruled the sheriff to show cause why the adjudication should not be set aside because of the existence of the lease, and succeeded.

The rule sued out and sustained in the Taylor, Knapp & Co. Case (2) was expressly authorized by law.

In the Buckner Case (3), the court said: "if a rule were authorized in this case," the distribution of the proceeds of the sale of the real estate involved should not be made as contended for. We infer from the terse statement of the record facts that the price of the sale had not been distributed when the rule was sued out.

The sheriff, in the Ash Case (4), proceeded by rule to have set aside an adjudication by him for nonpayment of the price. The right to so proceed was definitely recognized. However, it was also said by the court that in such circumstances, the sheriff may disregard the adjudication and proceed to another crying of the property, citing Lehman v. Ranson, 27 La.Ann. 279.

It was held in the Guillebert Case (5), that: "Purchaser could retain that portion of the price which would otherwise go to such interdict, to protect him against her claims or those of her heirs, in a rule by the sheriff to compel purchaser to pay balance of price, in view of Code Prac., arts. 683, 710, 711, et seq., and Civ.Code art. 2621."

In Mulling v. Jones, supra, (6), property had been seized under fieri facias and sold. The adjudication was annulled on the ground of insufficiency of description of the property in the advertisement of sale. The sheriff, after said adjudication, had canceled the notice of seizure in the mortgage records. In the meantime, Mulling acquired the judgment under which the fieri facias had issued. He ruled the sheriff to show cause why his ownership of the judgment should not be recognized, and why the erasure of the notice of seizure should not be annulled and the seizure decreed to be still in force, and why the sheriff should not proceed to sell the property under the writ. The rule was made absolute.

It was held in the Holzer Case (7), as is clearly reflected from the syllabus, that: "There is no error in a judgment which compels the sheriff, after due proceedings taken, to pay to the seizing creditor a surplus remaining in his hands after costs approved by the court have been satisfied."

The fund sought by the plaintiff in rule, the seizing creditor, had not left the sheriff's custody.

The Milliken & Farwell Case (8), recognizes the law, well established, that a purchaser at sheriff's sale, who has a privilege on the thing sold superior to that of the seizing creditor, may retain in his hands from the price bid by him, an amount equal to his privilege claim.

The principal issue in the Viau Case (9) related to liability for costs. The matter was disposed of on a rule taken by the Max Barnett Furniture Company, which had previously intervened in the case and filed a third opposition asserting a superior privilege on the furniture seized and sold to that asserted by the seizing creditor. The contest involved the distribution of funds held by the sheriff.

The burden of the prayer of the application is that the sheriff be required to "withdraw the permission granted" Vogt to retain in his hands, to pay himself and Fleming the amounts due them, the total of his bid save the costs of sale; and that the said sheriff be ordered to demand from Vogt, and Vogt be required to pay to the sheriff the full amount of the bid, less costs and $100.83, admitted to be due Vogt on the judgment; and, further, that the sheriff be ordered and required to pay to Chauvin the surplus in his hands from said bid, after deducting costs and the $100.83.

We have heretofore stated, as clearly appears from the return on the writ and the sheriff's deed, that contemporaneously with the sheriff's distribution of the bid, Fleming, on demand of his counsel, was paid what remained from the bid, after deducting costs and the amount of the judgment, and the mortgage and vendor's lien note surrendered and cancelled as an encumbrance on the property. It is immaterial to the ultimate result whether this balance should have gone to Fleming through the sheriff or directly to him from Vogt. If his mortgage and vendor's lien

were in force, as a second encumbrance, he was entitled to the balance. The mode of distribution of the bid was, as it should have been, predicated upon the mortgage certificate furnished to and read by the sheriff at the time of sale. That was his guide in disposing of the amount of the bid. No opposition or intervention had been filed and served requiring him to hold the funds in his hands or distribute same in a manner other than that which was dictated by the contents of the mortgage certificate. Should the prayer of the application be granted, a judgment in consonance therewith would simply order the sheriff to demand and order Vogt to do certain acts. What would be the result if the sheriff refused to do what is asked of him? Should he comply with such a judgment, what would be the result if Vogt refused to accede to the demand? It might be argued that, should he refuse the demand, the adjudication to him would be subject to annullment. The pertinency of these questions complicates the situation and makes it obvious that defendant's rights may only be adjudicated through an ordinary action. If Fleming was erroneously paid, Vogt is interested in rectifying the error.

Laches on the part of a litigant ofttimes bars the exercise of a right by him; in other instances, it simply denies to him one form of action and relegates him to another. One may be entitled to proceed summarily to assert and enforce a right, provided he acts promptly; but the right to thus proceed may be lost if the action is delayed.

In Succession of Jamison, supra, a belated creditor sought to enforce his claim by rule after homologation of the administrator's account. The court dismissed his action and said: "He is not entitled to proceed summarily and by rule before such homologation, or to a trial in the civil district court during vacation, for the purpose of making such proof; and the fact that he asserts his claim after the account is homologated does not confer those rights upon him."

This holding is referred to approvingly in Bienvenue v. Bienvenue and in Succession of Esteves, supra, wherein summary proceedings were dismissed as improper.

The judgment appealed from does not abridge to any extent any right to which plaintiff in rule may be entitled in connection with or growing out of the transactions and proceedings enumerated in his application. These may be asserted and urged by him in the future by an action governed by the rules of procedure obtaining in ordinary cases.

Being of the opinion that the lower court correctly adjudged the issue tendered by the exception, its action is affirmed, with costs.