See also testimony of Mr. Paul Schaefer, superintendent of plant to the same effect. Tr. pp. 222-226.

Mr. Morgan, an expert, also testified:

"Q. Have you noticed the side of the stack? A. Yes.

"Q. Is it streaked, Mr. Morgan? A. It was streaked on one side when I looked at it.

"Q. Can you explain the cause of streaking? A. That was due—the liquid that was causing the streaking or, rather, the liquid itself was an emulsion from water and it is caused by the fact that carrying a small amount of heavy liquid it would cling to the side of the pipe coming up. The liquid will not leave the pipe, it will not go over the top and come down but if you have any moisture on the pipe it will mix with that moisture and form this emulsion, ninety-nine (99%) per cent or ninety-eight (98%) per cent *water,* and run down the side in little drops.

"Q. Is the presence of that liquid on the side of the pipe any indication that liquids were sprayed from the stack over the surrounding territory? A. No, sir." Tr. pp. 277, 278.

(7) The right to rest in peace and quiet in one's home and the impairment of the enjoyment by petitioners of their home give rise to the opinion of this Court that, while the award to the petitioner, Mrs. Dodd, is adequate, the award to the petitioner, Mr. Dodd, is inadequate and should be increased from $650 to $1,500.

It is therefore ordered that the judgment appealed from be amended by increasing the award made to petitioner, Albertus D. Dodd, from $650 to $1,500, and that the judgment as amended be affirmed, and that defendant, Glen Rose Gasoline Company, Inc., pay all costs of this suit.

193 So. 354

**YOUNGER BROS., Inc., v. SPELL.**

**No. 35213.**

Nov. 27, 1939.

Rehearing Denied Jan. 9, 1940.

Chas. J. Rivet, of New Orleans, and F. Xavier Mouton, of Lafayette, for plaintiff and appellant.

L. Austin Fontenot, of Opelousas, and McCoy & King, of Lake Charles, for defendant and appellee.

O'NIELL, Chief Justice.

The plaintiff sued for $2,449.20 for services rendered in hauling the material and equipment for the drilling of an oil well on a lease owned by the defendant. The claim was duly recorded and was secured by a lien on the well and the lease, and upon the drilling rig, et cetera, under the provisions of Act No. 145 of 1934. The plaintiff asked for and obtained a writ of provisional seizure, under which the sheriff seized the drilling rig and equipment, under the provisions of the statute. Without answering the suit, the defendant filed a motion to dissolve the provisional seizure on the grounds (a) that the plaintiff did not allege facts sufficient to warrant the issuing of the writ, and (b) that the allegations of fact which the plaintiff made were not true. The defendant, in his motion to dissolve the writ, set up a reconventional demand for damages, claiming (a) $125 per day for the rental value of the drilling rig from the date of the seizure until it would be released, (b) $15,000 for the probable loss or forfeiture of the lease, (c) $4,000 for damages caused by the stopping of drilling operations, and (d) $500 for the attorney's fee for dissolving the writ. When the motion to dissolve was called for trial, counsel for the defendant insisted that the writ should be dissolved without the hearing of testimony, for want of the necessary allegations in the plaintiff's petition, as required by Section 4 of Act No. 145 of 1934. The judge refused to dissolve the writ on that ground and ordered evidence to be taken on the second ground urged in the motion to dissolve; that is, that the facts alleged in the plaintiff's petition, as a ground for the provisional seizure, were not true. After hearing the evidence the judge dissolved the writ and gave judgment in favor of the defendant for $2,250 damages. The plaintiff is appealing from the decision; and the defendant, answering the appeal, urges that his first ground for dissolving the writ should be sustained, and that the amount of the damages allowed should be increased from $2,250 to $4,300.

After the transcript was filed in this court, counsel for the plaintiff filed a plea which they called an exception of no cause of action, in which they pleaded that the defendant had no right to set up the reconventional demand for damages in his motion to dissolve the writ of provisional seizure, because the right to claim damages in such cases may be asserted only by way of a reconventional demand in the answer to the suit or by way of another suit.

If the plaintiff had objected in limine litis, to the defendant's setting up his reconventional demand for damages in his motion to dissolve the writ of provisional seizure, it is very likely that the objection would have prevailed. In article 377 of the Code of Practice it is declared that "in all cases of reconvention" the defendant may set up his demand "in his answer to the principal demand" or in a separate suit. Counsel for the defendant in this case argue that the law in that respect was changed by Act No. 50 of 1886, amending article 375 of the Code of Practice, so as to allow the defendant in any case where a conservatory writ is issued against him to claim damages by way of a reconventional demand in the same suit if the writ was ob-

tained wrongfully, even though the plaintiff and defendant reside in the same parish. But that amendment has nothing to do with article 377, prescribing the method for asserting a reconventional demand. There is good reason why a reconventional demand for damages for the alleged wrongful obtaining of a conservatory writ should not be allowed in a motion to dissolve the writ, but should be reserved until the defendant answers the suit. There is no equity in condemning a plaintiff in such a case to pay damages to the defendant before the plaintiff can offset the claim for damages with his claim against the defendant. In this case, for example, the defendant, answering a question propounded by the judge, acknowledged on the witness stand that he owed the plaintiff the amount sued for; and yet a judgment cannot be rendered in this proceeding for the amount sued for, as an offset against any sum which the defendant may be entitled to as damages if we find that the writ of provisional seizure was obtained wrongfully. The reason why no such judgment can be rendered in this proceeding is that the suit has not been tried, or put at issue, either by the filing of an answer or by the taking of a preliminary default. Besides, a motion to dissolve a conservatory writ is a summary proceeding; and a claim for damages, such as the defendant's reconventional demand in this case, is one which may be asserted only by the ordinary proceeding, and not by the summary proceeding, without the consent of the defendant in the proceeding. It is well settled that the summary proceeding, as distinguished from the ordinary proceeding, is not available in any case that does not belong to a class of cases for which the proceeding is expressly allowed by statute. Baker v. Doane, 3 La.Ann. 434; Austin Sumner & Co. v. Dunbar, 12 La.Ann. 182; Nolan's Heirs v. Taylor, 12 La.Ann. 201; Mussina v. Alling, 12 La.Ann. 799; Ledda v. Maumus, 17 La.Ann. 314; Succession of Maria Moore, 18 La.Ann. 512; Soule v. Worsham, 22 La.Ann. 78; Succession of Jamison, 108 La. 279, 32 So. 381; Succession of Gary, 120 La. 1028, 46 So. 12; Succession of Esteves, 182 La. 604, 162 So. 194; Bienvenue v. Bienvenue, 186 La. 429, 172 So. 516.

The appellant's exception to the method of procedure, however, is not really an exception of no cause of action. An exception of no cause of action, properly so called, may be filed at any stage of the suit. But the exception filed by the appellant in this instance is merely an objection to the method of procedure by which the defendant obtained judgment on his reconventional demand for damages. Such an objection is waived if the party proceeded against by summary procedure submits without objection to the method of procedure. Code of Pract. art. 333; Keene v. Relf, 11 La. 304; Erwin v. Bank of Kentucky, 5 La.Ann. 1; Arrowsmith v. Durell, 14 La.Ann. 849. The reason for the rule, obviously, is that one who is entitled to have his case tried by the ordinary proceeding, as distinguished from the summary proceeding, is not entitled to a trial by both the summary and the ordinary proceeding; for there is nothing contrary to public policy in a litigant's electing to have his case tried summarily, when he has the right to

have it tried by the ordinary mode of procedure. Hence, in a case like this, the courts will overlook the mode of procedure if the plaintiff—being the defendant in the reconventional demand—does not object to the defendant's setting up his reconventional demand for damages in his motion to dissolve the conservatory writ. Examples of such cases are Bridge v. Ennis, 28 La.Ann. 309; Whitney-Central National Bank v. Sinnott, 136 La. 95, 66 So. 551; and Cupples Co., Manufacturers v. Baskowitz, 172 La. 254, 134 So. 83. In the Whitney-Central National Bank case we said that damages, such as attorneys' fees for dissolving a conservatory writ, should not be allowed on a reconventional demand made in a motion or rule to dissolve the writ, and submitted without the taking of testimony, and hence without any evidence of the value of the services, other than that the judge might take judicial cognizance of it. But we did not intend to say— or to leave the inference—that the plaintiff in such a case could not object successfully to the defendant's urging a reconventional demand for damages in his motion or rule to dissolve the writ. The objection in this instance,—made for the first time in the exception of no cause of action,—after the trial of the reconventional demand,— comes too late.

It is doubtful whether the allegations on which the plaintiff obtained the writ of provisional seizure in this case should be deemed sufficient. Section 4 of Act No. 145 of 1934 requires, for the plaintiff to obtain a writ of provisional seizure, that he shall allege under oath "that he verily believes that said lease and the well or wells thereon are about to be discontinued or abandoned, or the drilling rigs, standard rigs, machinery, equipment * * * are about to be sold or removed from the place * * * so as to deprive such laborer * * * of the lien and privilege herein granted and provided for", etc. We quote now the allegation on which the writ was obtained by the plaintiff in this case,—viz:

"Petitioner further alleges, upon information and belief, that the defendant, Y. D. Spell, has discontinued drilling operations on the aforesaid lease for some weeks past, and, accordingly, your petitioner is entitled under the law, and particularly under Act No. 145 of the Louisiana Legislature of the year 1934, to a writ of provisional seizure without the necessity of furnishing bond, and to cause to be seized under the said writ all of the drilling rigs," etc.

It is not necessary, though, to decide now whether the allegation that the defendant had discontinued drilling operations for some weeks past was substantially the same as to say that the plaintiff verily believed that the lease and the well thereon were about to be discontinued or abandoned. For we concur in the conclusion of the judge of the district court that the plaintiff failed to prove either that the defendant had discontinued drilling operations for some weeks previous to the filing of the suit, or that the facts were such as to justify a belief that the lease or the well thereon was about to be discontinued or abandoned. The testimony shows that the defendant commenced drilling the

well in the latter part of May, and set his casing on the 5th of June. There was then a necessary shutdown of 12 days to allow the cement to harden. Drilling was resumed on June 17, and was continued to July 10, in the daytime only, with only one crew. It appears that a creditor of the defendant brought suit and obtained a writ of attachment, under which the sheriff seized the drilling rig and equipment, sometime between the 5th and the 17th of June. Thereafter, writs of provisional seizure were issued in two suits, brought by other creditors of the defendant; but, under instructions from the plaintiffs in the suits, the sheriff refrained from stopping the drilling operations. Soon after the 17th of June, when drilling was resumed, defects in the boilers developed, so that the drilling could not be done longer than a few days at a time. It became necessary to put new flues in the boilers. The work was commenced about the 10th of July, and was completed on one of the two boilers about the 20th of July. The drilling was resumed the next day, while the repair work was being done on the other boiler. Drilling was continued on the 21st, 22nd, and 23rd of July. Because of the necessity for other repairs, there was no drilling on the 24th or 25th of July, but it was resumed on the 26th and went on during the 27th, 28th, 29th and 30th of July. On that day the seizure was levied in this suit. The drilling was then stopped by the sheriff and was not resumed until the 26th of August, when the defendant complied with the sheriff's requirement that he should be protected by employer's liability insurance. The evidence on which the plaintiff based the allegation of belief that drilling operations were discontinued for some weeks before the seizure was levied was the testimony of the plaintiff's representative, who was at the well only twice, the first time being more than a month and perhaps nearly two months before the seizure, and the second time being about noon on the day of the seizure. We assume that the time of the first visit was when the drilling was suspended while the cement was hardening, or while the boilers were being repaired. Another fact from which the plaintiff's representative believed that the lease or the well was about to be discontinued or abandoned was that four suits had been filed against the defendant, and three seizures had been levied on the drilling rig. But the representative for the plaintiff, as a witness in the case, admitted that, at the time when he filed this suit, it was a matter of record in the office of the clerk of court,—though the plaintiff was not aware of the fact,—that the amounts claimed by the plaintiffs in three of the previous suits, in which seizures were levied, were paid by the defendant. The financial difficulties which he had encountered when this suit was filed were not enough to justify a belief that he was about to discontinue or abandon his lease or the well which he was drilling.

 Our opinion is that the amount of damages allowed the defendant is more than the proof justifies. On the trial of the motion to dissolve the writ of provisional seizure the defendant abandoned his claim of $15,000 for probable loss or forfeiture of his lease; for there was no such loss or forfeiture. Of the remaining

three items the judge allowed $1,250 on the claim of $125 per day for the rental value of the drilling rig. The rig was under seizure 26 days; hence the defendant, in his answer to the appeal, claims $3,250 for the rental value of the rig. The reason given by the judge for refusing to allow the rental value for all of the 26 days is that the defendant could have released the rig from seizure at any time by taking out employer's liability insurance, as required by the sheriff. And the reason why the judge allowed the rental value of the rig for the 10 days immediately following the seizure is that the law allowed the defendant 10 days in which to release the rig on bond. Inasmuch as the defendant might have lifted the seizure by taking out employers' liability insurance as well during the first 10 days as during the remaining 16 days of the seizure, there is no more reason why he should be paid the rental value of his drilling rig for the first 10 days than there would be for paying him the rental value for the remaining 16 days. Hence the judgment is wrong insofar as it allows the defendant the rental value of the drilling rig for the 10 days immediately following the seizure. The judge allowed the defendant $500 for loss occasioned by the stopping of drilling operations, and the consequent expense of returning the drill to the bottom of the hole after the seizure was released. The defendant testified that it required about 3 days, at an expense of about $225 per day, to return the drill to the bottom of the hole after the seizure was released. But the testimony on that subject is too vague and uncertain to sustain a judgment for any amount. The allowance of $500 for the attorney's fee for dissolving the writ of provisional seizure is all that the defendant claimed, and is not excessive.

For the reasons assigned, the exception of no cause of action, which the plaintiff filed in this court in opposition to the defendant's reconventional demand, is overruled. The judgment appealed from is amended by reducing the amount of damages allowed the defendant from $2,250 to $500; and, as thus amended, the judgment is affirmed. The plaintiff is to pay the costs incurred in the district court in the trial of the reconventional demand and the motion to dissolve the writ of provisional seizure; and the defendant is to pay the costs of this appeal. The question of liability for other court costs is to abide the final disposition of the case.

FOURNET, J., concurs.

ROGERS, J., concurs in the result.

HIGGINS, J., dissents.

HIGGINS, Justice (dissenting).

It is my opinion that the facts and circumstances of this case justified the plaintiff in verily believing that the debtor was about to discontinue drilling operations or about to abandon the same, under his mineral lease. The admitted debt was long past due and plaintiff made every reasonable demand and effort to secure a settlement of his claim before resorting to court, but in every instance, was met by evasion of the defendant. I respectfully dissent.