57 So.2d 409

**STATE ex rel. LORAINE, Inc., v. ADJUSTMENT BOARD OF CITY OF BATON ROUGE et al.**

No. 40523.

Jan. 14, 1952.

Rehearing Denied Feb. 18, 1952.

R. Gordon Kean, Jr., Acting Parish Atty.; Warren L. Mengis, Asst. Parish Atty., Baton Rouge, for defendants and appellants.

Byron R. Kantrow, E. Gordon West, all of Baton Rouge, for Intervenors and Appellants.

Borron, Owen, Borron & Delahaye, G. T. Owen, Jr., and Jack C. Caldwell, all of Baton Rouge, for relator and appellee.

FOURNET, Chief Justice.

The appellants—the City of Baton Rouge, James W. Phillips, Building Official of said City, and Intervenors to the petition of relator—prosecute this appeal from a judgment of the district court decreeing the Comprehensive Zoning Ordinance of 1950 of the City of Baton Rouge to be unconstitutional and ineffective in so far as it classified Relator's property as A–1 Single Family Dwelling, ordering that the alternative writ of mandamus be made peremptory and that appellants, City of Baton Rouge and James W. Phillips, Building Official, .reissue to relator the building permit previously issued, to construct a commercial establishment on his property.

The property in question, having a frontage of 300 feet on Stanford Avenue in the City of Baton Rouge and a depth of about 120 feet between parallel lines, at the time of its acquisition by the relator was unzoned, being located between two residential districts in lowland formerly a swamp which had been drained to render the land useful. Prior to the purchase, a comprehensive zoning plan was in the process of revision by the City Planning Commission, and the relator—a private business corporation of this State engaged in the development of real estate and the construction of commercial buildings for lease —seeking to insure that the property was free and would remain free of any restrictions as to its commercial use, prompted its vendor to secure a letter from the Planning Engineer of the City Planning Commission, dated July 27, 1949, which stated that in the revision of the comprehensive zoning plan then in process the classification of D–1 Commercial was proposed for the property in question. An examination by relator's attorneys of the preliminary zoning map (prepared by the Planning Commission for submission to the City Council as a part of the comprehensive zoning plan) confirmed the fact that according to the proposed plan the property would be zoned as D–1, suitable for stores, shops, etc. The sale was consummated on August 18, 1949, for a consideration of $7,875. A few days later (August 24) the local newspaper carried a full page reproduction of the above-mentioned preliminary zoning map which showed relator's property as bearing the symbol for Local Commerce, and at the bottom of the page there appeared an explanatory statement of which the following is an excerpt: "The proposed ordinance, if passed, will not have a retroactive effect."

The relator, having secured an agreement with Capitol Stores (operators of "super markets") for a ten-year lease, proceeded immediately with a topographic survey and soil tests, and with plans and specifications for a suitable building. These were submitted to the City Building

Permit Section on April ·12, 1950; permit No. 4363 was duly issued on April 19 to erect a store building at a cost of $64,800; the land was then cleared and piling tests were undertaken preliminary to commencement of construction; however, upon request of the Commission, relator agreed to withhold construction pending the final outcome of public hearings on the proposed zoning plan.

Meanwhile, on April 11, the day before relator applied for his permit, the Zoning Commission had caused to be published in the official journal a notice of public hearings, accompanied by a smaller reproduction of the zoning map differing from the one previously published in that the "Local Commerce" symbol had been removed from relator's property—this being the only change in a relatively large area—and it appeared thereon under the symbol designating "Single Family" use; also, no statement was appended concerning the nonretroactive effect of the proposed ordinance. Six days later the Zoning Commission adopted a resolution requesting the Mayor-President to inform proper departments to cease issuing permits not in conformity with the proposed plan. Public hearings were begun on April 24, during the course of which objection was made to the construction of the proposed store and to the contemplated use to be made of the property; and following a recommendation by the Commission that the property be reclassified as A–1 residential, the City Council at a meeting on August 2, 1950, adopted the Comprehensive Zoning Ordinance of 1950—in which relator's property was classified as A–1 Single Family Dwelling and which provided (Sec. 5, par. 11): "Any building permit issued after April 11, 1950 [the date of publication of the second proposed zoning map and notice of hearings] for the construction in an 'A–1' Single Family Dwelling district" of a building such as plaintiff proposed to construct "shall be and is hereby revoked and shall be recalled by the Building Official." Shortly thereafter relator was notified by James W. Phillips (appellant herein) that building permit No. 4363 dated April 19, 1950 was revoked, and no construction could proceed thereunder; whereupon relator sought every means possible to reactivate the permit by appealing to the Board of Adjustment under procedure provided in the Ordinance, and, upon the Board's refusal to pass on the relief requested, the present suit was instituted, in which relator sought a writ of certiorari to bring up the proceedings had before the Board so that determination could be made whether it had properly refused jurisdiction, praying also that the revocation of his permit of April 19, 1950 be set aside and that an alternative writ of mandamus issue directed to the appellants, the City and the Building Official, ordering the reissuance of the said permit and recalling the action of the City in its ordinance inso-

far as it attempted to classify the property of relator as other than D–1 Commercial.

Exceptions of no cause and no right of action filed on behalf of the Board of Adjustment were sustained below for the reason that the power and authority of the Board is restricted to minor variations in harmony with the general intent of the zoning restrictions and, being a creature of the City Council, a legislative body, it cannot change the law of its creator. Relator's suit as to the Board was dismissed, and no appeal was taken from that phase of the judgment.

The remaining respondents also filed exceptions of no right and no cause of action, and answered to the merits, stressing the highly residential character of the sections adjoining respondent's property and upholding its Family Dwelling classification as furthering the general welfare of the entire community. Owners of property in the adjoining residential subdivisions, nine in number, intervened and joined in the defense by resisting the relator's demands, and to this petition of intervention relator excepted, and answered. All exceptions were referred to the merits, and after trial judgment was rendered overruling the exceptions of the respondents and intervenors; and on the merits the trial judge found that the inclusion of relator's property within an A–1 Single Family Dwelling district had no substantial relation to the general welfare and that such inclusion constituted a taking of relator's property without due compensation.

In this Court the appellants are reurging the exceptions of no cause and no right of action, contending that since mandamus is an extraordinary remedy designed to compel performance of a purely ministerial duty, and since such duty under the facts of this case can exist only if it be made to appear that the ordinance is unconstitutional, the issuance of the writ of mandamus herein would be tantamount to holding that administrative officers are under requirement to pass on the legality of ordinances governing their actions.

The writ of mandamus, as defined in the Code of Practice, Art. 829, is "an order * * * addressed to an individual or corporation, * * * directing it to perform some certain act belonging to the * * * duty or quality with which it is clothed", and it therefore lies only to compel the performance of duties that are purely ministerial in nature. Savage v. Holmes, 15 La.Ann. 334; State ex rel. Bond v. Register of Conveyances, 162 La. 362, 110 So. 559; State ex rel. Globe Const. Co. v. Town of Plaquemine, 175 La. 69, 143 So. 7; State ex rel. Holcombe v. City of Lake Charles, 175 La. 803, 144 So. 502; State ex rel. Fitzmaurice v. Clay, City Clerk, 208 La. 443, 23 So.2d 177; State ex rel. Code v. Code, 215 La. 485, 41 So.2d 62. The writ may issue, however, as an incident to the successful outcome of a suit via ordinaria. That which the law does not sanction, in the absence of express provision therefor, is the

summary proceeding, Art. 98, Code of Practice, and lack of citation as in ordinary suits—which, for obvious reasons, cannot be extended beyond the cases in which it is expressly authorized, Art. 754, Code of Practice; Fischel v. Mercier, 32 La.Ann. 704; Succession of Jamison, 108 La. 279, 32 So. 381; Gary v. Brenholz, 120 La. 1028, 46 So. 12; Clement v. Gulf Refining Co. of Louisiana, 173 La. 249, 136 So. 581; and of summary proceeding in the instant case the appellants make no complaint whatsoever nor did they except to the want of a citation. The record discloses that they were given 12 days to comply with relator's demand or show cause why the relief should not be granted; that at the end of that period respondents (appellants), without objection to the mode of process, filed exceptions of no cause or right of action leveled solely at the lack of right to the writ of mandamus, and, with reservation of their rights thereunder, answered. The minutes of court disclose that before argument on these exceptions, the assignment was cancelled by agreement of counsel and the matter reassigned on three advancing dates covering a period of almost a month—the appellants in the interim having waived citation to answer a supplemental petition. It is therefore apparent that they were afforded ample opportunity to prepare and make defense and, having submitted themselves to the jurisdiction of the court in the manner above outlined, their right to be cited upon institution of the suit is considered as waived.

■ With reference to the propriety of mandamus in the instant case, when the relator's prayer is considered with the allegations of the petition proper, it is evident that the primary action herein is to have the revocation of relator's permit declared null; and while relator did pray that an alternative writ of mandamus issue, ordering the reissuance of the permit revoked, to so order would clearly be a vain and useless thing since the setting aside of the revocation would leave the permit in full force and effect. Consequently, regardless of the outcome, there is no necessity for mandamus directing the reissuance of the same permit. For these reason the exceptions of no cause or right of action were properly overruled.

■ On the merits, the reasons of the trial judge, showing careful analysis of the facts, clearly support his conclusion that the final classification of relator's property within the residential restriction not only would result in depriving relator of use of its property for the present and the foreseeable future, but bears no substantial relationship to the health, safety, convenience and prosperity or general welfare of the inhabitants in the part of the city affected. It appears that a large swamp which originally covered the entire area between higher ridges of land was some years ago drained into two lakes; at the lower end of one of these lakes a causeway or levee was constructed, and relator's property fronts on the road which is built on this

causeway. The land is marshy lowland, has never been inhabited, is never entirely dry, and without additional fill is subject to overflow; although relator's property has been built up, there is a swamp at the rear, and additional fill is required to raise it above flood stage to permit construction of the store. The record abounds with testimony to the effect that the cost of draining and filling this and surrounding land preparatory to residential use would make the price of lots prohibitive, and it is clear that the only way the classification fits into the general zoning scheme is that the property lies between two desirable residential districts from which, in a few cases, the proposed store would be visible in the distance. A further recitation of the facts would be redundant in view of the overwhelming preponderance of the evidence that the change of classification, aimed at this single piece of property, was prompted by considerations having no practical basis and would result in unreasonably depriving the relator of the use of his property without just compensation.

For the reasons assigned, the judgment of the lower court will be recast to read as follows: It is ordered, adjudged and decreed that the Comprehensive Zoning Ordinance of 1950 of the City of Baton Rouge, in its classification of relator's property (fully described in the opinion and judgment of the lower court) as A–1 Single Family dwelling, is unconstitutional and therefore ineffective; and the revocation of the building permit issued to Loraine, Inc., under date of April 19, 1950, is set aside; all costs to be paid by the defendants and intervenors.