329 So.2d 767 (1976)
SOUTHSIDE CIVIC ASSOCIATION, INC.
v.
GUARANTY SAVINGS ASSURANCE COMPANY et al.
No. 10589.
Court of Appeal of Louisiana, First Circuit.
March 1, 1976.
Rehearing Denied April 12, 1976.
Writ Granted June 4, 1976.
*768 Felix R. Weill, Baton Rouge, for appellant.
Floyd J. Falcon, Jr., and F. D. de la Barre, Baton Rouge, for Guaranty Sav.
Thomas H. Hudson and Michael A. Patterson, Baton Rouge, for John Prevost.
Joseph F. Keogh, Parish Atty., and Edwin C. Bankston, Asst. Parish Atty., for Robert C. Groht.
Before LANDRY, COVINGTON and PONDER, JJ.
*769 COVINGTON, Judge:
This suit involves the proper zoning and use of a certain tract of land in East Baton Rouge Parish, Louisiana, and the building located on the tract of land. The subject property consists of Lots 3 through 7 of the subdivision of the W. B. Kennard Tract and an unnumbered lot northeast of the numbered lots.
Plaintiff-appellants, Southside Civic Association, Inc., is composed of residential property owners in the southern portion of the City of Baton Rouge and includes owners in University Gardens, Stanford Place and in the immediate vicinity and adjacent to the subject property. Defendants-appellees are Guaranty Savings Assurance Company, the owner of the subject property, John E. Prevost, the lessee of the subject property, and Robert C. Groht, in his capacity as a building official of the City of Baton Rouge. Defendant, Prevost, had leased a portion of the Subject property and was operating an automobile dealership known as Prevost Volvo.
In its petition, the plaintiff alleges that the subject property is zoned A-1, single-family residential, for the unnumbered lot and A-4, multiple-dwelling residential, for the numbered lots, under the City's comprehensive zoning ordinance. The plaintiff, claiming that the defendant Prevost's use of the subject property as an automobile dealership violated said zoning ordinance, asked for a writ of mandamus, injunctive relief and a declaratory judgment decreeing that the subject property was properly zoned as alleged. By agreement of all of the parties, the trial court heard the matter only on the declaratory judgment issue with the parties reserving all rights as to the other demands.
After hearing, the trial court rendered judgment in favor of the defendants declaring the subject property, except for the unnumbered lot, to be unzoned. As to the unnumbered lot, the court declared defendant Prevost's use of said lot to be contrary to "its present A-1 Single Family Classification." Plaintiff-appellant, Southside Civic Association, Inc., has suspensively appealed the adverse judgment. Defendant Prevost and the other defendants have not appealed the court's ruling that the use of the unnumbered lot violated the zoning ordinance and that aspect of the judgment is now final. Moreover, defendant Prevost has acquiesced in that part of the judgment, by asserting in his brief that ". . . Prevost has complied in every respect with the judgment of the trial court in this regard and is not presently using that tract for any purpose."
The plaintiff-appellant first argues that the validity of the zoning ordinances was not properly before the trial court because the defendants did not affirmatively assert this issue in their answers. There is no merit in this contention. The basis of the declaratory judgment action was the validity vel non of the zoning ordinances. See Villa Del Rey v. City of Baton Rouge, 233 So.2d 566 (La.App. 1st Cir. 1970), noted in 31 La.L.Rev. 549 (1971). The plaintiff's prayer, in part, reads:
"Wherefore, petitioner prays: I. For judgment declaring lots 3, 4, 5, 6 and 7 of the Subdivision of the W. B. Kennard property to be subject to A-4 zoning and the unnumbered lot being used by defendant Prevost for parking, display and storage to be subject to A-1 zoning and further declaring that any pre-existing non-conforming use of the subject property has been lost by nonuse, thereby requiring any owner, tenant, or other occupant of the subject property to conform to the applicable use regulations as set forth in the Comprehensive Zoning Ordinance."
The plaintiff's prayer thus squarely presents the validity of the zoning ordinances as an issue.
The plaintiff next argues that there is no showing that the zoning ordinances were invalid. The evidence shows that the *770 property in question was originally zoned by the City of Baton Rouge in 1950, when the first comprehensive zoning ordinances were enacted by the City. The pertinent ordinance, purporting to zone the property as A-1, single-family residential, was challenged by a real estate developer in the case of State ex rel. Loraine, Inc. v. Adjustment Board of City of Baton Rouge, 220 La. 708, 57 So.2d 409 (1952). The Supreme Court in the Loraine case held the ordinance unconstitutional and ineffective in classifying the property as A-1. The effect of this decision was that the property remained "unzoned" as it had been prior to the enactment of the 1950 ordinance.
Despite the decision of the Supreme Court, the Planning Commission of the Parish of East Baton Rouge continued to deal with the property as having an A-1 classification. Subsequently, the City-Parish zoning authority enacted, in 1955, a zoning ordinance which purported to change the classification of the property in question from A-1 to C, multiple-dwelling classification. In 1958, a new Comprehensive Zoning Ordinance purported to change the property classification from C to A-4, a letter-change in classification only.
While several factual and legal issues are presented in this appeal, we consider that the pivotal issue is whether the zoning authority gave adequate public notice of the proposed zoning ordinances here involved so that it would have jurisdiction to consider such zoning ordinances. The trial judge found, and we agree with his finding, that the public notices involved indicated that there would be zoning changes from A-1 classification, single-family residential, to C (now A-4), multiple-dwelling residential. The public notice did not advertise that unzoned property was to be zoned to a C (A-4) classification. As advertised, the purpose of the 1955 ordinance appeared to be a rezoning so as to permit an increased or less restrictive use of the property in question (being reclassified from A-1 to C), whereas it was in fact imposing a more restrictive use of the property (from unzoned to C). The 1958 ordinance purported to change the zoning of the property in question from C, multiple-dwelling residential, to A-4, also multiple-dwelling residential, and thus, apparently no change was proposed in the permitted use of the property, only a letter-classification change being contemplated.
The trial court, after considering the notice, stated in his written reasons:
"The above ordinance can be given no effect and is null and void. The notice was so grossly misleading as to deprive the public, the Zoning Commission, and the Council of an opportunity to apply the applicable criteria to the proposed change.
"The Court is well aware of and has considered plaintiff's argument, that exactness in the manner of enactment of an ordinance may not be required so long as the mandatory requirements have been substantially observed, and that the ordinance should not be voided because of an irregularity in its passage, particularly where it has stood unchallenged for a long period of time.
"A notice which indicates proposed action which would increase use is tantamount to no notice when in truth and fact, the effect of the proposed action is to drastically restrict usage."
Zoning ordinances are in derogation of the rights to private ownership by restricting the use of property and must be strictly construed in favor of the property owner. See Time-Saver Stores, Inc. v. Board of Zoning Adjustment of City of New Orleans, 261 So.2d 273 (La.App. 4th Cir. 1973), writ refused, 262 La. 311, 263 So.2d 47; East Baton Rouge Parish v. Bratcher, 244 So.2d 915 (La.App. 1st Cir. 1971), writ refused, 258 La. 364, 246 So.2d 684 (1971). Zoning is the deprivation, for the public good, of certain uses of property to which such property might otherwise be *771 put. Therefore, before a property owner may be thus deprived of his property, he is entitled to proper notice and hearing. See 16A C.J.S. Constitutional Law § 703, page 1186.
The requirement of notice imposes upon the zoning authority a mandatory duty to give proper notice, in default of which the zoning authority has no jurisdiction to enact a valid zoning ordinance. See 96 A.L.R.2d 449, 455. Since proper notice is required, an ambiguous or misleading notice will be considered so defective as to destroy the jurisdiction of the zoning authority. See 1 Antieau, Municipal Corporation Law, sec. 797, page 490.113. The rule making notice a mandatory and jurisdictional prerequisite to the enactment of zoning ordinances is also applicable to amendments or revisions of an original zoning ordinance and to reclassifications of property theretofore unzoned; 96 A.L.R.2d 449, 446. Thus, a notice which does not present the true nature of the proposed amendment or revision must be treated as no notice at all; see The Law of Zoning and Planning, Vol. 1, chapter 8, page 7. That is to say, a zoning ordinance which does not comply with notice requirements is void; State ex rel. Holcombe v. City of Lake Charles, 175 La. 803, 144 So. 502 (1932); Beauvais v. D. C. Hall Transport, 49 So.2d 44 (La.App. 2nd Cir. 1950).
In the instant case, as the trial court pointed out, the notice of the zoning ordinances in question not only failed to warn of the true nature of the proposed zoning change, but in effect deceived or misled the public into believing that the permitted use would be less restrictive under the proposed ordinance when in fact it would be more restrictive. Such a notice can only be construed as inadequate, and the zoning ordinances in question must be held to be invalid. Hence, Lots 3 through 7 of the subdivision of the W. B. Kennard Tract must be declared to be unzoned.
The trial judge did not rule on the question of nonconforming use, and did not make any factual finding on this issue, because he considered it unnecessary in view of the holding that the zoning ordinances were invalid. We, therefore, pretermit discussion of the question of non-conforming use.
We find no error in the trial court's decision in this matter. Accordingly, the judgment of the trial court is affirmed at plaintiff-appellant's costs.
AFFIRMED.
PONDER, Judge (dissenting).
I dissent.
Zoning ordinances are presumed to be valid and those attacking the validity have the burden of proof. Meyers v. City of Baton Rouge, 185 So.2d 278 (La.App. 1st Cir. 1966; Sears Roebuck & Co. v. City of Alexandria, 155 So.2d 776 (La.App. 3rd Cir. 1963), writ den., 245 La. 83, 157 So.2d 230.
The proof of the notices involved consists of certified copies of the ordinances, one in 1955, the title of which is "Amending the Comprehensive Zoning Map of the City of Baton Rouge, as contained in and made a part of the `Comprehensive Zoning Ordinance of the City of Baton Rouge for 1950' so as to change the zoning of Lots 3 through 11, inclusive, W. B. Kennard Tract, on the East side of Stanford Avenue, 300 feet North of West Lakeshore Drive from `A-1' Single Dwelling District to `C' Multiple Dwelling District" and another in 1958, the title of which is "An Ordinance dividing the City of Baton Rouge (the Parish of East Baton Rouge) into districts and within which said districts regulating and restricting the height, number of stories, and size of buildings and other structures, the size of yards, courts, and other open spaces, the density of population, and the location and use of buildings, structures, and land for trade, industry, residence, and other purposes; establishing a Board of Adjustment and prescribing to powers and duties; providing penalties for *772 the Violation of the Ordinances; and repealing all Ordinances in conflict herewith."
The only evidence in regard to the notices that were given is contained in the following testimony:
"Q Just so we have the picture completed on the Ordinance Number 435, do you have anything in your records that indicate that the property was advertised, introduced for public hearing, and the other necessary concomitants to a valid enaction of an ordinance done with any other description than that which appears at the top of that ordinance; namely a rezoning of subject tract from A-1 to A-4; do you understand that question?

A Yes; I don'tdidn't find anything in the record.

Q So, it is correct to assume that this is the way it had proceeded from the point of application to the point of enaction?

A Uh-huh.

Q It wasn't one of these cases where the Council, on the floor of its own motion changes the application and grants a zoning which was not sought or recommended; it is not that type of case?

A No, as a matter of fact the application was for neighborhood commercial, changed by the Council to apartments; so, it would appear that there was an assumption that a change was needed to expand or change the use on the property."
These questions were asked of and answered by the Director of Planning and Zoning who is not the custodian of the records of the Councils. He is only assuming that the practice is that the usual notice given was in accord with the ordinance adopted. As a matter of fact, he is evidently referring to a change on the council floor changing the ordinance from what notice of it had been given. There is no explanation in the record for the absence of the actual public notices given or their unavailability.
Furthermore, the ordinance of 1958 was a comprehensive zoning ordinance. The title clearly indicates that; so if it be held that the notice for the 1955 amendment be held insufficient, making that ordinance invalid, the enactment of another comprehensive ordinance in 1958 would have the effect of a complete new ordinance rather than just an amendment to one already in effect. I know of no law that would require in the notice the detailing of all changes being made in the preexisting zoning ordinance or zoning map or the actual zoning in effect as a result of court decision. See L.R.S. 33:4724. Furthermore, there is no testimony or evidence in regard to what the notice given was.
I therefore believe that the property is validly zoned A-4, subject, however, to non-conforming use in effect on the date of the adoption of the comprehensive ordinance of 1958.
Under Section 2.302 of the zoning ordinance non-conforming uses may be continued. Under Section 2.305 the stopping of the non-conforming use for a period of twelve months or more results in the necessity of conforming with the use regulations. However, under the rationale of the case of State ex rel. Time Saver Stores v. Board of Zoning Adjustments of the City of New Orleans, 261 So.2d 773 (La.App. 4th Cir. 1972), writ refused, 262 La. 311, 263 So.2d 47, the non-conforming use of part of a building prevents the running of the period against the whole. It is my belief, therefore, that the property in question can be used for any purpose that the other part of the building can be used for.
There was testimony that the highest classification allowing the existence of a grocery store was C1. However, the *773 highest classification allowing automobile dealerships is C-2.
I believe, too, that the case should be remanded because it was tried only on the petition for a declaratory judgment, the parties reserving all rights under the suit for injunctive and mandamus relief.
I would therefore reverse and remand.