339 So.2d 323 (1976)
SOUTHSIDE CIVIC ASSOCIATION, INC.
v.
GUARANTY SAVINGS ASSURANCE CO. et al.
No. 58019.
Supreme Court of Louisiana.
November 8, 1976.
Felix R. Weill, Watson, Blanche, Wilson & Posner, Baton Rouge, for plaintiff-applicant.
Michael A. Patterson, Roy, Kiesel, Patterson, Hudson & Abadie, Baton Rouge, for John E. Prevost, Floyd J. Falcon, Jr., Dodd, Barker, Avant, Wall & Thomas, A Division of Dodd & Barker, A Law Corporation, Baton Rouge, for Guaranty Savings Assurance Co.
Joseph F. Keogh, Parish Atty., Clinton Hyatt, Jr., Asst. Parish Atty., for defendants-respondents.
CALOGERO, Justice.
This law suit concerns the zoning classification and use of a certain tract of land located in the City of Baton Rouge and the building located thereon. The tract consists of five lots (numbered five through seven *324 of the W. B. Kennard property, fronting on Stanford Avenue) near a subdivision known as University Gardens.[1] Plaintiff Southside Civic Association Inc. is a Louisiana nonprofit corporation composed of residential property owners, many of whom live in University Gardens. Plaintiff brought this action against Guaranty Savings Assurance Company, owner of the five lots and the building situated thereon; Guaranty's lessee, John E. Prevost, who was operating an automobile dealership (Prevost Volvo) in a portion of the building; and Robert C. Groht, the Building Official of the City of Baton Rouge who purportedly is the official with the ministerial duty of enforcing the provisions of the Baton Rouge Comprehensive Zoning Ordinance. The suit alleges that use of the property for an auto dealership violates the Baton Rouge zoning ordinance, and plaintiff requests a writ of mandamus, an injunction, and a declaratory judgment decreeing that the subject property is zoned A-4, multiple dwelling residential.
The parties agreed that the trial court should hear only the declaratory judgment issue, reserving their rights as to the other demands. After a hearing, the trial judge declared the property unzoned in favor of defendants. On appeal the circuit court affirmed. We granted plaintiff's application for writ of certiorari in order to review the rulings of the courts below that the property is unzoned.
The property in question was zoned A-1 in the initial Comprehensive Zoning Ordinance adopted by the City of Baton Rouge, Parish of East Baton Rouge in 1950. That ordinance, insofar as it affected the very property in question, was declared unconstitutional by this Court in the case of State ex rel. Loraine, Inc. v. Adjustment Board of City of Baton Rouge, 220 La. 708, 57 So.2d 409 (1952), and the property was declared to be unzoned. After the decision in Loraine and the construction of the building in question,[2] the 1950 Comprehensive Zoning Ordinance was amended on August 10, 1955 by Ordinance Number 435 which zoned the subject property C multiple dwelling.
In 1958 a completely new Comprehensive Zoning Ordinance for the City of Baton Rouge, Parish of East Baton Rouge (Ordinance Number 792) was enacted. In that 1958 ordinance the zoning of the subject property was established as A-4, general residential-multiple dwelling, a zoning classification under the new ordinance comparable to the former C multiple dwelling classification.
It was in September of 1974 that Prevost applied for and was eventually granted a certificate of occupancy[3] which allowed him to occupy the premises 922 Stanford Avenue as a retail and wholesale auto dealership. Thereafter, Prevost began to operate Prevost Volvo on the property, and plaintiffs filed the instant lawsuit.
*325 Defendants' position in this litigation, a position which has heretofore prevailed in both courts below, is that, following declaration by this Court in the Loraine case that the property was unzoned, its unrestricted use has never been legally changed. They challenge the city's effort in the 1955 ordinance to classify the property C multiple dwelling on the grounds that the notification in 1955 purportedly advised of a proposed change, not from the property's true unzoned status, but from zoning classification A-1, to C. They claim that such notice deceptively suggested a broadening of property usage when in fact the change (from unzoned to C) constituted an imposition of restrictions on use. They contend that similar reasons strike with nullity notification incident to passage of the 1958 ordinance because, as they assert in brief, "the notice which the owner of the subject property would have received would be" that the proposed change was in effect simply a redesignation (C to A-4) of an essentially unchanged zoning classification. The Court of Appeal merely said in this regard that the 1958 ordinance purported to change the zoning of the property in question from C (multiple dwelling residential) to A-4 (also multiple dwelling residential), a letter classification change only. The Court of Appeal offered no further explanation of its action in upsetting the 1958 Comprehensive Zoning Ordinance of the City of Baton Rouge.
We granted writs in this case because of what we construed to be error in the Court of Appeal's finding legally inapplicable to the subject property the Comprehensive Zoning Ordinance of 1958.
When we read the record in this case, the only evidence concerning notice which we discover with respect to either the 1955 or 1958 ordinance was the testimony of Robert C. Groht who answered "Yes" when questioned whether it was correct to assume that, as relates to Ordinance Number 435 of 1955, rezoning of the subject tract had "proceeded from the point of application to the point of enaction" as a rezoning from A-1 to the newer designation. The record contains no indication as to just what actual public notices were given in connection with either proposed ordinance. Nor is there any suggestion that the actual public notices given could not have been introduced at the trial.
Zoning ordinances are presumed to be valid. Parties attacking their validity have the burden of proof. Meyers v. City of Baton Rouge, 185 So.2d 278 (La.App. 1st Cir. 1966); Sears, Roebuck & Company v. City of Alexandria, 155 So.2d 776 (La.App. 3rd Cir. 1963), writ denied, 245 La. 83, 157 So.2d 230 (1963).
Comprehensive Zoning Ordinance Number 792 was effective as to the Parish of East Baton Rouge on October 7, 1958 and as to the City of Baton Rouge on October 20, 1958. It is presumed that it is, and was, legally effective. It purports to repeal "all ordinances in conflict herewith." It purports to divide the City of Baton Rouge (Parish of East Baton Rouge) into five districts and within said districts, among other things, to regulate the use of buildings and land. It further subdivides the five districts into specific sub-districts among which is an A-4, general residential district. The ordinance incorporates by reference an official map, on which the subject property is designated A-4.
The ordinance was enacted under the authority of La.R.S. 33:4721, et seq. being the incorporation into the Revised Statutes of 1950 of Act 240 of 1926. La.R.S. 33:4724 provides that the legislative body of a municipality desiring to adopt municipal zoning regulations must first conduct a public hearing at which parties in interest have an opportunity to be heard, after publication of notice of the time and place of the hearing in the Official Journal of the municipality.
There was no showing at the trial of this case that the 1958 ordinance was not enacted after appropriate notice and hearing as required by state law. In fact, in briefs in connection with this case, as we earlier indicated, there is only the surmise by defendants as to the type of notice that was had in *326 connection with the proposed ordinance. Nor did the Court of Appeal find that the appropriate and legal notice and hearing was not followed incident to passage of the ordinance. Defendants contend that the 1958 ordinance purported to change the zoning of the property in question from C multiple dwelling residential to A-4. The record does not reflect that such notice was given by the council, i. e., from C to A-4. And the Comprehensive Zoning Ordinance itself does not reflect the prior zoning of the subject property.
If the owner of the property had established that he had been notified (incorrectly) of a proposed change from C to A-4 rather than from unzoned to A-4, his position would be a bit stronger. On the other hand, even in that event his contention would not necessarily be meritorious. Notification of the zoning classification to which the property is to be changed would appear to comport with due process as it affects an owner who perhaps should be presumed to know the actual zoning classification of his property.
Defense counsel in oral argument stated that anything less than actual notice to this landowner would constitute a violation of due process of law. Although we need not reach the issue of the type of notice necessary in this case because of the absence from the record of the type of notice given, we note that the predominant rule is quite the contrary:
"Statutes requiring notice preparatory to the enactment or amendment of zoning measures typically provide for constructive rather than actual notice, as by publication in a local newspaper a specified number of times. These statutes and the ordinances passed pursuant to them are sometimes attacked as invalid in that, without actual notice, the owner has been deprived of his property without due process of law. The courts have held rather uniformly that this contention is groundless and that the statute need not provide for, nor the ordinance be passed upon, actual notice." 36 A.L.R.2d 459 and cases cited therein.
In any event Ordinance Number 792 of 1958, the Comprehensive Zoning Ordinance for the City of Baton Rouge, Parish of East Baton Rouge, presumed to be valid, has not been shown to be invalid by defendants, who have attacked it. They have specifically failed to show that it was not enacted in conformity with state and/or local law after appropriate notice and hearing at which parties in interest had an opportunity to be heard. R.S. 33:4724.
We therefore hold that lots three through seven of the Kennard Tract (subject property) are validly zoned A-4 under the 1958 Baton Rouge Comprehensive Zoning Ordinance, subject to any non-conforming use which may be applicable.
Inasmuch as the lower courts did not reach the question of non-conforming use and did not make any factual finding on this issue, having considered it unnecessary in view of their holdings that the 1958 ordinance was invalid as relates to the subject property, we will remand this case to the district court for a determination of this yet-unresolved issue.
Accordingly the judgment of the Court of Appeal affirming the district court judgment, and holding the controverted property to be unzoned is reversed and set aside. The case is remanded to the district court for further consideration in light of the foregoing.
NOTES
[1] The contest in the trial court also included an unnumbered lot immediately northeast of lots three through seven. That lot was found to be properly zoned A-1 single family, and its zoning is no longer at issue in the litigation.
[2] Defendants assert that the subject property has had various uses over the years. In the early '50's the building was constructed pursuant to a permit issued prior to the first attempt at zoning the property. It was occupied by Capital Stores as a grocery store and later by National Food Store. In 1966, the building was renovated and split into two parts; the southwest part of the building was numbered 844 Stanford Avenue, the northeast part, 992 Stanford Avenue. Since 1966, a wall has separated the two parts of the building, and separate entrances afforded each. The Building Official keeps a separate file on 844 and 992 Stanford Avenue, and separate certificates of occupancy have been required for each part of the building. Mr. Groht testified that the two parts of the building are treated separately.

The part of the building designated 844 Stanford Avenue has been used as a grocery store since the renovation of the building in 1966, and use of that portion of the building is not the subject of this litigation. The other part of the building 992 Stanford Avenue, which is the subject of this lawsuit, has, defendant asserts, been used over recent years variously as a bar and lounge and more recently for the retail and wholesale auto dealership operated by defendant Prevost.
[3] Although Prevost's application for the certificate was initially denied, it was later granted on the strength of an opinion issued by the City-Parish Attorney.